**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

```
FILED
JAMES J. WALDRON, CLERK
June 19, 2009
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy
```

|  |  |
|---|---|
| IN RE: | CHAPTER 7 |
| United Auto Mart, Inc., | |
| Debtor. | CASE NO.:   08-17916  (NLW) |
| T.D. Bank, N.A., | Adv. No.:   08-2198 |
| Plaintiff, | |
| v. | **OPINION** |
| Robert Wasserman, as Chapter 7 Trustee for United Auto Mart, Inc.; Zakar's Motors of Little Ferry, Inc.; Zakar's Motor's, Inc.; Citifinancial Auto; and John Does 1-10, | |
| Defendants. | |

**Before:     HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Daniel M. Eliades, Esq.
Joseph Cerra, Esq.
Forman, Holt, Eliades & Ravin, LLC
80 Route 4 East, Suite 290
Paramus, NJ 07652
Attorneys for T.D. Bank, N.A.

Michael McLaughlin, Esq.
Wasserman, Jurista & Stolz, PC
225 Millburn Avenue, Suite 207
PO Box 1029
Millburn, NJ 07041
Attorneys for Robert B. Wasserman, Chapter 7 Trustee

In this matter the plaintiff moves for summary judgment claiming that certain sale proceeds held by the Chapter 7 Trustee belong to the plaintiff under either a constructive trust theory or an equitable lien theory. The Chapter 7 trustee cross moves for summary judgment on its counter-claim asserting that the strong arm powers of a trustee under 11 U.S.C. § 544 defeat the equitable claims alleged by the plaintiff. As set forth below, both motions are denied.

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B), (K) and (O) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984.

**STATEMENT OF FACTS**

The debtor, United Auto Mart, Inc. ("UAM") filed its Chapter 7 petition on April 30, 2008. Robert B. Wasserman ("Trustee") was appointed as Chapter 7 Trustee on May 15, 2008 and has continued to administer the UAM bankruptcy estate since that date.

**A.    UAM'S Business Dealings With the Bank**

UAM was in the business of selling used automobiles to the general public. In March 2007 UAM entered into a Dealer Agreement with T.D. Bank, N.A. f/k/a T.D. Banknorth, N.A. ("TD Bank"). (David Wolf Certification ("Wolf Cert.") Ex. A) Under the terms of the Dealer Agreement, TD Bank agreed to purchase certain Retail Installment Contracts and Security Agreements from UAM:

> Bank agrees to purchase from Dealer, and Dealer agrees to assign and convey to the Bank, all Contracts which the Bank deems to be acceptable in the Bank's sole and absolute discretion for the price and upon the terms and conditions described in this Agreement. Any such

2

>assignment shall be without recourse as to the payment obligations of the Buyer(s) under any Contract so assigned, except as provided herein or as otherwise provided in any specific assignment.

(Wolf Cert. Ex. A)  In the Dealer Agreement, UAM represented, *inter alia*, that (i) TD Bank would receive properly endorsed Retail Installment Sale Contracts as well as "valid and properly recorded" first priority liens on the vehicles and that (ii) the vehicles had been delivered to and accepted by the purchasers. (Id.)

TD Bank asserts that instead of meeting its obligations under the Dealer Agreement, UAM engaged in a scheme to defraud it and others.  TD Bank claims that "UAM procured confidential information of numerous persons, including social security numbers, dates of birth and addresses, and used that information, without consent, to complete Retail Installment Contracts and Security Agreements." (Wolf Cert. ¶ 15)  Additionally, the bank alleges that UAM used the stolen personal information to forge vehicle purchase agreements and other documents related to the purchase of vehicles. (Id. ¶ 16)  To evidence the fraudulent nature of these transactions, TD Bank submits Affidavits of Forgery from fourteen individuals in which the affiants state that their signatures were forged and that they had no knowledge of the underlying transactions. (Id. Exs. G & H)  The Trustee concedes these facts.

TD Bank claims that, unaware of UAM's fraudulent behavior, it relied upon the falsified documents when purchasing at least twenty-one (21) Retail Installment Sale Contracts, thereby sustaining damages in excess of $650,000. (Id. ¶¶ 17 & 18, Ex. B)  Further, TD Bank states that none of the purchasers which identified UAM on the Retail Installment Sale Contracts actually purchased the listed vehicles. (Id. ¶ 20)  The Trustee does not dispute these facts.

From the court's examination of Exhibit B, it appears that all of the Retail Installment Contracts attached to the Wolf Certification were executed in August 2007.  It is not clear from

3

either the Wolf Certification or Exhibit B when UAM began submitting fraudulent contracts and other documents to TD Bank. As a result, it is not evident whether the fraudulent scheme was limited to the August 2007 sales. If UAM's fraudulent conduct occurred over a longer time period it raises issues as to TD Bank's diligence.

**B.      Sale of the Vehicles**

TD Bank states that it never received any payments on the Retail Installment Sale Contracts. (Wolf Cert. ¶ 22) Ultimately, TD Bank began to investigate why it was not receiving payments on the Retail Installment Contracts. It hired an appraiser on September 6, 2007 to inspect all of the vehicles at UAM's business premises. (Id. ¶ 31) As a result of the appraisal inspection, TD Bank learned that five vehicles that were purportedly sold under Retail Installment Contracts were actually physically located at the business premises. (Id. ¶ 31, Ex. J)

These five vehicles are the subject of the present adversary proceeding. They are as follows:

1. 2003 Land Rover Range Rover bearing VIN number SALME11483A122879.

2. 2003 Mercedes-Benz SL Class Model bearing VIN number WDBSK75F23F024115.

3. 2007 Cadillac Escalade Model bearing VIN Number 1GYFK63817R267611.

4. 2007 Cadillac Escalade Model bearing VIN number 1GYFK63897R163898.

5. 2003 BMW 7-Series Model bearing VIN WBAGN63433DS43250.

(Id. ¶ 31) With regard to all of these vehicles, UAM provided TD Bank with copies of the Notice of Lien and Reassignment of Certificate of Ownership by Licensed New Jersey Dealers, which

reflected TD Bank's security interest in the vehicles. (Id. ¶ 33) However, UAM did not submit any of these documents to the Division of Motor Vehicles to be recorded. Wolf Cert. ¶ 25)

Also in September 2007, TD Bank commenced suit against UAM and certain individuals in the Superior Court of the State of New Jersey, Chancery Division. (Id. ¶ 34) William J. Hunt was first appointed as Special Fiscal Agent for UAM, and subsequently appointed as its Receiver. (Id. ¶ 35) Mr. Hunt obtained court authorization to sell the vehicles and was prepared to do so when UAM filed its Chapter 7 petition. (Id. ¶ 37) After the Trustee was appointed, the Trustee sought to complete the sale of vehicles. In order to auction the vehicles the Trustee first had to obtain duplicate titles. (Trustee's Counterstatement of Undisputed Material Facts ¶ 2.) The Trustee notes that the duplicate titles did not contain any notations of liens held by TD Bank. (Id.) The net proceeds of the auction sale conducted by the Trustee amounted to $134,037.50. (Wolf Cert. ¶ 43) Curiously, neither TD Bank nor the Trustee explains any of the circumstances surrounding the presence of these vehicles on UAM's lot in September, 2008. In other words, it is not clear to the court if any other entity has an interest in the vehicles. The Wolf Certification states "UAM defrauded numerous customers by failing to pay off existing loans on vehicles traded in despite agreeing to do so." (Id. ¶ 17, n.1) Additionally, proofs of claim have been filed in which claimants assert that UAM sold their vehicles for them, but did not remit any funds to them. These statements and the proofs of claim raise an issue regarding UAM's ownership of the vehicles.

## **DISCUSSION**

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rules of Bankruptcy Procedure 7056, provides for summary judgment where "the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. On a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of material fact is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A properly supported motion for summary judgment "will not be defeated by the mere existence of some factual dispute between the parties," unless the dispute over those facts has the potential to affect the lawsuit's outcome. *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).

The moving party bears the initial burden of proving an absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323; *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir. 1976), *cert denied,* 429 U.S. 1038 (1977). "Once a case has been made in support of summary judgment, [the burden shifts and] the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing a need for trial." *Ponzoni v. Kraft General Foods, Inc.,* 774 F. Supp. 299, 308 (D.N.J. 1991), aff'd, 968 F.2d 14 (3d Cir. 1992)(emphasis in original); *Anderson,* 477 U.S. at 250.

Because only the existence of a genuine issue of fact can defeat a motion for summary judgment, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. "If the evidence is merely colorable or is not significantly probative summary judgment may be granted." *Id.* (citations omitted). Additionally, when parties submit cross-motions for summary judgment "each motion must be considered on its own merits, and both may be denied." William W. Schwarzer et al. *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (1992). Further, "even

6

though each party believes it is entitled to recover as a matter of law, genuine factual disputes may remain" and "courts are no more permitted to resolve such disputes on cross-motions for summary judgment than on a single motion." *Id.*

B.  **State Law Determines Extent and Validity of TD Bank's Interest**

To determine whether either an equitable lien or a constructive trust exists in favor of TD Bank such that the proceeds from the Trustee's auction sale are not estate property under 11 U.S.C. § 541, the court must look to state law. In *Butner v. United States,* 440 U.S. 48, 55 (1979) the Supreme Court stated that "property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Furthermore, if the court finds that TD Bank has an interest in the auction sale proceeds either because of an equitable lien or a constructive trust, the ability of the trustee to avoid such interests is likewise a matter of state law. *In re Bridge,* 18 F.3d 195, 200 (3d Cir. 1994)("Although the trustee's strong arm powers arise under federal law, the scope of those avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing") see also *In re Alston*, 322 B.R. 265, 268 (Bankr. D.N.J. 2005)(citing *Lewis v. Diethorn*, 893 F.2d 648, 650 (3d Cir. 1990)).

C.  **Fact Issues Preclude Summary Judgment**

TD Bank asserts that UAM intended to grant, and it intended to receive, a properly recorded first priority lien on all five vehicles that were sold by the Trustee. It points out that the Dealer Agreement specifically provided for a first priority lien on each vehicle. TD Bank further points out

7

that UAM warranted that it "has or will perfect a security interest" in each vehicle in favor of TD Bank for each Retail Installment Contract and Security Agreement submitted. On these facts TD Bank argues that it does not matter that the proper documentation was not filed with the New Jersey Division of Motor Vehicles. TD Bank claims that an equitable lien exists in its favor because under New Jersey law:

> The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. If an intent to give, charge, or pledge property, real or personal, as security for an obligation, appears, and the property or thing intended to be given, charged, or pledged is sufficiently described or identified, then the equitable lien or mortgage will follow as of course

*Rutherford Nat'l Bank v. H.R. Bogle & Co.,* 114 N.J. Eq. 571, 574 (Ch. 1933)(citations omitted); *Matter of Hoffman,* 63 N.J. 69, 77 (N.J. 1973). In short, TD Bank claims that because both it and UAM intended that TD Bank hold perfected security interests in the five vehicles, the "equitable lien will follow as of course." *Matter of Hoffman,* 63 N.J. at 77. Moreover, TD Bank points out that UAM specifically identified the vehicles as part of TD Bank's collateral. Thus, it further concludes that the second criteria for an equitable lien, that the property be specifically identified, has been met. See, *Batt v. Scully*, 168 B.R. 541, 546 (D.N.J. 1994)(citing *Temple v. Clinton Trust Co.,* 1 N.J. 219, 226 (1948)).

The Trustee replies that TD Bank's failure to obtain properly perfected liens in compliance with the New Jersey Motor Vehicle Certificate of Ownership Law (N.J.S.A. 39:10-8 through N.J.S.A. 39:10 - 11) is nothing more than a contractual breach of the Dealer Agreement and a result of TD Bank's failure to take adequate steps to protect itself. The Trustee further bolsters his position by reference to the statement in *In re Manufacturers Credit Corp.,* 441 F.2d 1313, 1319 (3d Cir. 1971) that applying the concept of substantial compliance to the New Jersey Motor Vehicle

8

Certificate Ownership Law in order to perfect the bank's lien effectively negates subsections C and D of N.J.S.A. 39:10-11 and constitutes "prohibited judicial legislation." The Trustee also argues that a prerequisite for upholding an equitable lien against a trustee is that the creditor must have taken all available means to perfect its lien. *In re L.D. Patella Const. Corp.,* 114 B.R. 53, 58 (Bankr. D.N.J. 1990); *In re O.P.M. Leasing Serv., Inc.,* 23 B.R. 104, 119 (Bankr. S.D.N.Y. 1982). Thus, he contends that instead of permitting UAM to perfect TD Bank's interest in the vehicles, TD Bank should have retained control over the process and thereby insured that its security interests were reflected on the Certificates of Ownership filed with the Division of Motor Vehicles.

Though TD Bank and the Trustee both claim that no material facts need be weighed by the court, the reality is that like all equitable remedies the imposition of an equitable lien or a constructive trust is fact-driven and the facts supplied suggest the need for yet more facts. For example, the record reveals that the Dealer Agreement was executed in March 2007. The transactions on which TD Bank grounds its equitable lien claim all occurred in August 2007. Noticeably missing from the evidentiary record is whether there were any sales transactions in period from March 2007 through July 2007 that were properly recorded with the Division of Motor Vehicles. In fact, there is no description of how or whether TD Bank monitored any of the sales transactions to insure that its security interest was properly reflected. For that matter, TD Bank doesn't indicate whether it performed any due diligence prior to entering into the Dealer Agreement with UAM. Additionally, neither TD Bank nor the Trustee address the industry practice regarding Dealer Agreements such as the one at issue in this adversary.

The contextual fact issues just identified by the court are significant because they bear on TD Bank's actual reliance and its efforts to protect itself. The cases relied upon by TD Bank are factually inapposite in that they do not involve a lien that could have been recorded. In

9

Case 08-02198-NLW    Doc 33    Filed 06/19/09    Entered 06/19/09 13:55:19    Desc Main
                    Document      Page 10 of 13

circumstances somewhat similar to the matter at hand, other courts have found that a secured creditor's lack of diligence weighs against finding that an equitable lien has priority over the trustee. *Matter of Keidel,* 613 F.2d 172, 174 (7th Cir. 1980)(Bank could have made delivery of the certificate of title a condition of advancing funds); *Matter of Churchwell*, 80 B.R. 855, 859-60 (W.D. Mich. 1987)(pursuant to statute, burden was on the bank to deliver the certificate of title for recording, and its failure to do so leaves the security interest unperfected and avoidable); *In re Gringeri Brothers Transportation Co., Inc.,* 14 B.R. 396, 401-403 (Bankr. D. Mass. 1981)(secured party who unreasonably relied on purchaser known to be lax in his business conduct to file certificates of title did not act with diligence and did not have priority over the trustee); *In re Trim-Lean Meat Products, Inc.,* 10 B.R. 333, 335 (D. Del. 1981)(no equitable relief where creditor failed to follow up and see that lien had been perfected). *In re Solar Energy Sales & Serv., Inc.,* 4 B.R. 364, 370 (Bankr. D. Utah 1980)(A principal issue in determining the existence of an equitable lien is whether the creditor has done all it reasonably can do to perfect its lien, but is thwarted by an uncooperative debtor).

However, none of the cases described above contain any findings of fraud and in that respect differ markedly from the matter before this court. Notably, the courts in *Trim-Lean* and *Solar Energy* did observe that an equitable lien may arise where an uncooperative debtor has prevented a secured creditor from perfecting its interest. *Trim-Lean Meat Products* at 335; *Solar Energy,* 4 B.R. at 370. Thus, on a more extensive factual record TD Bank might still prevail.

Unfortunately, New Jersey case authority is scant. The only case found by the court applied the doctrine of equitable subordination to give priority to a bank over a state court receiver asserting his status as a lien creditor. *Kaplan v. Walker,* 395 A.2d 897, 900-901 (App. Div. 1978). In *Kaplan* Newton Trust Company held a properly perfected lien on a truck. After the underlying loan fell in default, the owner obtained a loan from Commercial Trust Company of New Jersey ("Commercial

10

Trust") to pay off the Newton Trust Company loan. Although it obtained a note and security agreement, Commercial Trust failed to have its lien recorded on the title or to have the title recorded with the Director of Motor Vehicles. However, it appears that the Newton Trust Company documents remained of record. Sometime after the loan transaction with Commercial Trust, the owner became insolvent and a state court receiver was appointed.

The receiver brought an action to determine the validity of Commercial Trust's lien. The trial court found that Commercial Trust's unperfected security interest was subordinate to the receiver's status as a lien creditor under the Uniform Commercial Code. The Appellate Division reversed, finding that application of the doctrine of equitable subrogation was appropriate because the receiver was not prejudiced by application of equitable subrogation principles. 395 A. 2d at 900. The court also observed that in New Jersey it is the law that "in the absence of supervening equities, negligence by the party asserting the right of subrogation will not bar him from relief." *Id*. at 901.

While *Kaplan* addressed equitable subordination rather than equitable liens, it bears on the matter at hand because the case demonstrates a willingness by the New Jersey courts to apply an equitable remedy even where the Uniform Commercial Code and the New Jersey Motor Vehicle Law would seem to dictate a different result. Again, a greater factual record is necessary to aid in the determination of whether there are supervening equities that weigh in favor of the Trustee notwithstanding the fraud which TD Bank claims.

TD Bank's assertion of a constructive trust is nothing more than the other side of the equitable remedy coin, and like its claim for an equitable lien, lacks sufficient factual support. There is no question that under New Jersey law a constructive trust is a remedial device that can be imposed upon a showing that property has been obtained by a wrongful act and the recipient will be unjustly enriched by retaining the property. *Flanigan v. Munson*, 175 N.J. 597, 608 (2003)(citing

11

*D'Ippolito v. Castoro*, 51 N.J. 584, 589 (1968)). However, it is equally true that "breach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust." *Presten v. Sailer,* 225 N.J. Super, 178, 195 (App. Div. 1988). Much of TD Bank's complaint and summary judgment motion is grounded on the various provisions of the Dealer Agreement breached by UAM. The parties here are sophisticated business people and it is not clear whether TD Bank actually did rely, or should have relied on UAM to insure that it held properly perfected security interests. As evidenced by the proofs of claim set forth in the Claims Register, it appears that a number of individuals and other financial institutions were likely defrauded by UAM and on the present record it is not clear why TD Bank has any greater right to the sale proceeds produced by the Trustee's auction. Indeed, neither the Trustee nor the Bank has identified how these vehicles were acquired by UAM . Given the scope of the fraud alleged by TD Bank these vehicles may never have been UAM's to pledge as collateral.

Nor is the court persuaded that the Trustee's cross-motion for summary judgment can be granted. The Trustee relies upon *In re Omegas Group, Inc.,* 16 F.3d 1443 (6th Cir. 1994) and *In re Ades & Berg Group Investors,* 550 F.3d 240 (2d Cir. 2008), both of which generally reject constructive trusts as contrary to the purpose of the Bankruptcy Code. The court in *Ades & Berg* cited its earlier precedent in *Superintendent of Ins. v. Ochs (In re First Cent. Fin. Corp.),* 377 F.3d 209, 217 (2d Cir. 2004) for the conclusion that there is no unjust enrichment where the Trustee's conduct is "fully consistent with - and indeed required  by - the obligation imposed by the Bankruptcy Code to marshal and preserve estate assets."

However, neither *Omegas Group* or *Ades & Berg* constitute the law of this circuit. In *In re Sharon Steel Corp.,* 41 F.3d 92, 95  (3d Cir. 1994), the Third Circuit stated that the court must look to state law to determine whether a trust relationship exists. Further, it stated that funds held in a

constructive trust are not property of the bankruptcy estate. *Id.* at 95. This statement is consistent with its earlier observation in *Universal Bonding Ins. Co. v. Gittens & Sprinkle Enter., Inc.,* 960 F.2d 366, 372 n.2 (3d Cir. 1992) that § 541(d)'s limitations on the scope of the bankruptcy estate prevails over the trustee's strong arm powers under § 541 of the Code." Thus, it is evident that constructive trusts have been recognized under the case authority of this circuit and the Trustee's contention that the policies of the Bankruptcy Code prevent a trustee and the bankruptcy estate from being unjustly enriched is not supported by any Third Circuit case authority.

## **CONCLUSION**

For the reasons set forth above the summary judgment motion by TD Bank and the cross-motion for summary judgment by the Trustee are denied.


Dated: June 19, 2009                              _____/s/_____
                                                  NOVALYN L. WINFIELD
                                                  United States Bankruptcy Judge